# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **Ruben DelValles-Vincente,** | : |  |
|  | : |  |
| **Petitioner** | : | **CIVIL ACTION NO. 3:21-cv-335** |
|  | : |  |
| **v.** | : | **(JUDGE MANNION)** |
|  | : |  |
| **Tina Walker, Superintendent SCI-Fayette,** | : |  |
|  | : |  |
| **Respondent** | : |  |
|  | : |  |

## <u>MEMORANDUM</u>

Petitioner Ruben DelValles-Vincente, who is confined at the State Correctional Institution at Fayette, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). The Commonwealth of Pennsylvania has responded to his petition, (Doc. 8), to which response Petitioner has replied. (Doc. 11).

Petitioner properly named Mark Capozza, then-Superintendent of SCI-Fayette, as respondent. <u>See</u> Rules Governing §2254 Cases, Rule 2(a), 28 U.S.C. foll. §2254 ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody."). The Superintendent of SCI-Fayette is now Tina Walker. <u>See</u> https://www.cor.pa.gov/Facilities/StatePrisons/Pages/Fayette.aspx.

Accordingly, the caption of this matter is amended to name Tina Walker as respondent.

## I.    BACKGROUND[1]

### A. Procedural Background

Fights broke out at a York, Pennsylvania party and ended with a fatal gunshot. (Doc. 8 at 9–10; Doc. 11 at 4–7). Petitioner was charged with murder, stood trial before a jury, and was found guilty of first degree and third-degree murder. (Doc. 8-1 at 6–7). The judge sentenced him to life in prison. (Id.). Petitioner moved for post-sentence relief, challenging the sufficiency and weight of the evidence and the court's jury instructions, but the trial court denied his motion. (Id. at 638–644).

Petitioner appealed his judgment of sentence to the Pennsylvania Superior Court, raising the same challenges. (Doc. 8-1 at 646). The Superior Court affirmed and the Pennsylvania Supreme Court denied his petition for allowance of appeal. (Doc. 8-1 at 646–660). He next filed a petition for post-conviction collateral relief under Pennsylvania's Post Conviction Relief Act,

---

[1] The Commonwealth has provided a consolidated record of the state-court proceedings in this matter. (See Respondent's Reproduced Record, Doc. 8-1). The state court matter, which originated in the Court of Common Pleas of York County, is Docket No. CP-67-CR-0001780-2014.

42 Pa. Cons. Stat. §§9541–46 (PCRA). (Id. at 8). The trial court denied his petition, (id. at 689–711), he appealed from the trial court's denial of his petition, and the Superior Court affirmed. (Id. at 772–790).

Petitioner now applies for a writ of habeas corpus on the ground that he is being held in custody in violation of the Constitution. See 28 U.S.C. §2254(a). Specifically, he contends that he was denied his Sixth Amendment[2] right to the assistance of counsel for his defense because his trial counsel was ineffective for (1) "inadequately developing the defense of diminished capacity"; (2) "pursuing inconsistent and irreconcilable defenses"; (3) "failing to present Cindy Martinez and Manuel Torres Raices as witnesses at trial"; and (4) "failing to introduce evidence of Petitioner's good character for truthfulness and peacefulness." (Doc. 1). He also contends that he was denied his Fourteenth Amendment right to due process of law by the Commonwealth's refusal to grant him a new trial on the basis of after-discovered evidence. (Doc. 1).

The petition is timely. A 1-year period of limitations applies to habeas corpus petitions by those held in custody pursuant to state-court judgments.

---

[2] The Sixth Amendment's guarantee of the assistance of counsel in criminal prosecutions is made applicable to the States by the Fourteenth Amendment's Due Process Clause. Gideon v. Wainwright, 372 U.S. 335 (1963).

28 U.S.C. §2244(d)(1). This period ordinarily runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review," and does not run during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." §2244(d). Here, the Pennsylvania Supreme Court denied allowance of appeal from Petitioner's judgment of sentence on December 22, 2016. Commonwealth v. DelValles-Vincente, 164 A.3d 471, 640 Pa. 556 (Pa. 2016). He filed his PCRA petition on January 24, 2017, (Doc. 8-1 at 14), the Superior Court affirmed the trial court's denial of his petition on June 8, 2020, 237 A.3d 1041 (Table), 2020 WL 3056117 (Pa. Super. 2020), and he filed the instant petition on February 23, 2021. (Doc. 1). So, excluding the time during which his PCRA petition was pending, less than 1 year elapsed from the date his judgment of sentence became final until he filed this petition.

### B. Factual Background

On December 29, 2013, Petitioner went to a party at a friend's house. (Doc. 8-1 at 394–95). He drank alcohol and used drugs there. (Id. at 395). Inside the house, he and Carlos Ramos-Diaz argued and got into a fist fight. (Id. at 398). Petitioner then went outside, and another fight involving him and Ramos-Diaz took place. (Id. at 404–05).

Petitioner testified that during this second fight, he saw Ramos-Diaz pick up a gun from the ground. (Id. at 405). Following a struggle between the two, Petitioner "started shooting," because he "was fearful for [his] own life." (Id. at 406, 408). He further testified that it was not his intention to kill Ramos-Diaz. (Id. at 413).

Other witnesses testified that Ramos-Diaz had been walking away from Petitioner when he was shot. (Doc. 8-1 at 128–30, 259, 309–310). An expert in forensic pathology testified for the Commonwealth that, based on an autopsy, it was his opinion that the bullets entered Ramos-Diaz from behind. (Id. at 279–80). Mr. Ramos-Diaz died from the gunshot wounds. (Id. at 284–85).

## II.    LEGAL STANDARDS

"[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).

## A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

> (A) the applicant has exhausted all the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective processes; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

> 28 U.S.C. §2254(b).

Exhaustion requires that the petitioner "give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). This means that he must "invoke[e] one complete round of the State's established appellate review process." Id. "In Pennsylvania, a defendant exhausts his state remedies for a federal claim either by raising the claim on direct appeal or in a petition for collateral relief under the PCRA." Bennet v. Superintendent Graterford SCI, 886 F.3d 268, 280 (3d Cir. 2018). PCRA petitioners "need not seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a 'full opportunity to resolve any constitutional claims.'" Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).

To exhaust a claim, the petitioner must "fairly present[]" that claim to the state courts." Picard v. Connor, 404 U.S. 270, 275 (1971).

> That is, the petitioner must have presented a federal claim's factual and legal substance to the state courts in a manner that put the state courts on notice that a federal claim was being asserted. If a petitioner's federal claim was not "fairly presented" and further state-court review is no longer available under state law, the claim is procedurally defaulted and may be entertained in a federal habeas petition only if there is a basis for excusing the procedural default.

Wilkerson v. Superintendent Fayette SCI, 871 F.3d 221, 228 (3d Cir. 2017) (internal quotations, citations, omissions, and alterations omitted).

"[W]hen a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies to pursue" or when it "is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule," that claim is procedurally defaulted. Rolan v. Coleman, 680 F.3d 311, 317 (3d Cir. 2012).  Federal courts will not review the merits of procedurally defaulted claims. Martinez v. Ryan, 566 U.S. 1, 9 (2012).

### B. Review of state court decisions

For claims raised in a habeas petition that were decided on the merits by the state courts, federal courts review the state-court adjudication to determine whether it:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d)(1).

Regarding this standard of review, the Third Circuit has explained that:

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. A decision involves an "unreasonable application" of federal law if no fairminded jurist could agree with the state court's decision.

Wilkerson, 871 F.3d at 228 (internal citations and quotations omitted).

"For purposes of §2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Harrington v. Richter, 562 U.S. 86, 101 (2011). Reviewing the state court's decision, "a habeas court must determine what arguments or theories supported or … could have supported" it, and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the United States Supreme Court. Id. at 102. "If that standard is difficult to meet, that is because it was meant to be." Id. It requires a petitioner to "show that that the state court's ruling on the

- 8 -

claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

## C. Ineffective Assistance of Counsel

"It has long been recognized that the right to counsel" guaranteed by the Sixth Amendment "is the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). Ineffective assistance of counsel claims are governed by the standard established in Strickland v. Washington, 466 U.S. 668 (1984). Harrington, 562 U.S. at 92.

Under Strickland, one asserting ineffective assistance of counsel must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." 466 U.S. at 687.  The first prong requires a showing that "counsel's representation fell below an objective level of reasonableness." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 688). To establish the second, "a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694).

### D. Due Process

The Fourteenth Amendment commands that a State "shall" not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV §1. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The reasonable-doubt standard "provides concrete substance for" the "axiomatic and elementary principle" that the accused are presumed innocent. Id. at 363.

Relatedly, due process guarantees criminal defendants a fair trial, and the Constitution "defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment." Strickland, 466 U.S. at 684–85. The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

"Thus, a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Strickland, 466 U.S. at 685.

But "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." Herrera v. Collins, 506 U.S. 390, 399 (1993). The due process protections thereafter afforded him differ from those afforded the accused. See District Attorney's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 68–69 (2009). Although state-created rights and those essential to their realization can trigger due process protection, Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 463 (1981), the states have "more flexibility in deciding what procedures are needed in the context of postconviction relief" than in ordinary criminal procedure. Osborne, 557 U.S. at 69.  In assessing the constitutional sufficiency of state procedures for vindicating a post-conviction right, "the question is whether consideration of [a petitioner's] claim within the framework of the State's procedures … offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental, or transgresses any recognized principle of fundamental fairness in operation." Id. at 69. So "[f]ederal courts may upset

a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." Id.

### III.   DISCUSSION

Petitioner raises five grounds for relief. (Doc. 1). The court addresses these grounds in order.

### A. Ground One - Ineffective assistance: failure to adequately develop diminished capacity defense

Petitioner's first argument is that his trial counsel was ineffective where he "attempted to put on a diminished capacity defense without fully developing it." (Doc. 1).

Addressing this claim, the Superior Court observed that Petitioner's own testimony in his defense at trial contradicted a defense of diminished capacity. 2020 WL 3056117, at **3–4. That was because, while a diminished capacity due to voluntary intoxication defense requires a showing that the defendant "was overwhelmed to the point of losing his faculties and sensibilities," Commonwealth v. Padilla, 80 A.3d 1238, 1265 (Pa. 2013), Petitioner at trial testified that, despite being intoxicated, he "remembered exactly what happened" during the fight. 2020 WL 30561117, at *4. (See Doc. 8-1 at 430). Noting that "[t]rial counsel … cannot instruct a defendant to

- 12 -

testify to something that did not occur," the Superior Court concluded that this claim lacked merit. 2020 WL 30561117, at *4.

Petitioner's testimony at trial rendered a diminished capacity defense untenable. (Doc. 8-1 at 430). So counsel could not have been unreasonable for any failure to further develop such defense. For the same reason, the court cannot conclude that the result of Petitioner's criminal proceeding would have been different had trial counsel further developed this defense. The Superior Court therefore did not err on this ground.

## B. Ground Two - Ineffective assistance: pursuing inconsistent and irreconcilable defenses

Petitioner next argues that his trial counsel was ineffective where he "tried to simultaneously present the adverse defenses of justification and diminished capacity." (Doc. 1). According to Petitioner, this approach "sabotaged both defenses and cost [him] a legitimate defense and his right to due process of law." (Id.).

The Superior Court concluded that Petitioner had waived this claim by failing to develop it "with meaningful argument and citation to pertinent authority." 2020 WL 305617, at *5 ("Appellant baldly asserts that trial counsel presented 'inconsistent and irreconcilable' defenses and devotes the rest of his argument to his claim that trial counsel failed to substantially develop both

defenses."). For this conclusion it relied on <u>Commonwealth v. Johnson</u>, 985 A.2d 915, 924 (Pa. 2009), which explained that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." <u>See also</u> Pa. R. App. P. 2119(a) (each point treated in an argument must be "followed by such discussion and citation of authorities as are deemed pertinent").

The Commonwealth asserts that this claim is unexhausted because Petitioner did not fairly present it to the state courts. (Doc. 8 at 19–20). It alternatively argues that Petitioner's claim lacks merit because a criminal defendant "may offer as many alternative defenses as he so chooses, and they need not be consistent." (Id. at 21 (quoting <u>Commonwealth v. Joyner</u>, 365 A.2d 1233, 1236 (Pa. 1976)).

Under the doctrine of "procedural default," "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the petitioner failed to abide by a state procedural rule." <u>Martinez v. Ryan</u>, 566 U.S. 1, 9 (2012). "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal

ground adequate to support a judgment and the rule is firmly established and consistently followed." Id.

In his brief to the Superior Court, Petitioner submitted that the PCRA court erroneously concluded that his trial counsel's strategy of "presenting dual defenses of diminished capacity and justification" did not constitute ineffective assistance of counsel. (Doc. 8-1 at 751). He argued that these defenses "were inconsistent and irreconcilable." (Id. at 751–52). That was the entirety of his argument on this point. The remainder of that section of his brief was devoted to Petitioner's argument that each defense was inadequately developed. (Id. at 752–54).

In denying this claim, the Superior Court undoubtedly relied on a state procedural rule: namely, a rule of appellate procedure for presenting arguments. That rule was adequate to support a judgment against Petitioner on this ground because it resulted in a conclusion that his argument was waived. And that rule is firmly established and consistently followed. See, e.g., Commonwealth v. Bishop, 217 A.3d 833, 841 (Pa. 2019); Commonwealth v. Smyrnes, 154 A.3d 741, 748 (Pa. 2017); Wirth v. Commonwealth, 95 A.3d 822, 837 (Pa. 2014); Johnson, 985 A.2d at 924; Commonwealth v. Walter, 966 A.2d 560, 566 (Pa. 2009).

So Ground Two is procedurally defaulted, and this court will not review it.

### C. Ground Three - Ineffective assistance: failing to present certain witnesses at trial

Petitioner's third ground for relief is that his trial counsel was ineffective for failing to call Cindy Martinez and Manuel Torres Raices as witnesses at trial. (Doc. 1). He avers that Ms. Martinez and Mr. Torres Raices "were present at the scene and would have testified that one or more of the people testifying against Petitioner had left the scene before the fight that led to the decedent's death." (Id.).

In his brief, Petitioner further posits that presenting these witnesses would have allowed him "to establish to the jury that his … perception and memory was so negatively impaired that he did not even remember that they were standing nearby when the incident occurred." (Id. at 22). He also contends that these witnesses "could have answered the question on how DelValles-Vincente came to possess the firearm." (Id. at 23).

But Petitioner at trial testified that Ms. Martinez and Mr. Torres Raices had left the party before the shooting. As the Superior Court recited, the following exchange occurred on direct examination. After Petitioner described the first fight, his counsel asked:

- 16 -

> [Defense counsel]: Did you leave the party at that time?
> [Petitioner]: Yes, outside of the house.
> [Defense Counsel]: What happened then?
> [Petitioner]: I said to my cousin Manuel, Manuel, get on with Cindy. I said to Manuel, let's go, but Victor is inside and we can't leave.
> [Defense Counsel]: And then what happened then?
> [Petitioner]: Cindy left with Manuel.

(Doc. 8-2 at 401). 2020 WL 3056117, at *5 ("Thus, as neither Cindy nor Manuel were present at the time of the shooting, they could not provide testimony about [Petitioner's] mental state and support a defense of diminished capacity.").

Petitioner does not now address this testimony. (Doc. 11 at 22–23). Nor does he explain how his counsel was deficient for failing to elicit testimony that would have contradicted his own. The court cannot say that counsel's decision not to present such testimony fell below an objective level of reasonableness. Therefore, Petitioner has not established that the Superior Court's conclusion on this ground was contrary to law or based on an unreasonable determination of the facts.

### D. Ground Four - Ineffective assistance: failing to introduce evidence of good character for truthfulness or peacefulness

Fourth, Petitioner argues that his trial counsel was ineffective for failing to introduce evidence of his good character for truthfulness and

peacefulness. (Doc. 1).

The Superior Court found that Petitioner's argument as to how such evidence would have altered the outcome of the proceeding was "undeveloped" and thus did not entitle him to relief. 2020 WL 3056117 at *8 ("Herein, Petitioner baldly asserts that 'the introduction of character evidence had a reasonable probability of resulting in a different verdict favorable to [the] defense.'"). (See Doc. 8-1 at 760).

In his brief to the Superior Court, Petitioner averred that "there were available witnesses ready to testify on [his] behalf for his good reputation in the community for truth, peacefulness, and nonviolence." (Doc. 8-1 at 760). He argued that both his credibility (because he testified) and his "character trait of not being an aggressor, being peaceful or nonviolent" were at issue, and that counsel had no reasonable strategy for failing to call character witnesses. (Id. at 759–60). According to Petitioner, "[t]he introduction of character evidence had a reasonable probability of resulting in a different verdict favorable for [the] defense." (Id. at 760).

This court cannot conclude that the Superior Court's decision that Petitioner's "undeveloped" claim did not entitle him to relief was contrary to or involved an unreasonable application of federal law.

The prejudice element of an ineffective assistance of counsel claim requires the defendant to "demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 694). Petitioner had not *demonstrated* a reasonable probability of a different result to the Superior Court simply by asserting, as he did in his brief, that "[t]he introduction of character evidence had a reasonable probability of resulting in a different verdict favorable for [the] defense." (Doc. 8-1 at 760). So the Superior Court's rejection of this claim was not contrary to federal law or unreasonable.

Nor can the court conclude that there is a reasonable probability that had Petitioner's counsel introduced the evidence he proposes, the result of his trial would have been different. His character for truthfulness or peacefulness was not attacked, so such testimony would have been of limited use in contradicting the prosecution's case. And Petitioner's description of the second fight was at odds with that of multiple witnesses, whose stories were corroborated by each other and by the medical evidence. In these circumstances, the court sees no reasonable possibility that introduction of character witnesses or witnesses testifying as to Petitioner's reputation for peacefulness would have resulted in different verdict.

Loruama Pacheco-Morales testified that after the first fight between Petitioner and Ramos-Diaz, Petitioner wanted another fight, and threatened to kill Pacheco-Morales' family if they didn't bring Ramos-Diaz outside to fight. (Doc. 8-1 at 122). She further testified that during the second fight, Ramos-Diaz did not have a gun, that after the fight Ramos-Diaz again threatened violence if Ramos-Diaz's did not fight a third time, and that Victor Martinez-Raices passed Petitioner a gun and Petitioner "went after [Ramos-Diaz] and that's when he shot him" standing up from about 15 feet away, while Ramos-Diaz was walking away. (Id. at 125–29, 138).

Juan Rosario-Pacheco similarly testified that after the first fight, Petitioner threatened that if the people inside the house did not take Ramos-Diaz outside to fight, "he was going to come in with the gun." (Id. at 178–79). Also like Ms. Pacheco-Morales, he testified that he did not see Ramos-Diaz with a gun that evening. (Id. at 181). And Mr. Rosario-Pacheco testified that Martinez-Raices handed Petitioner a gun, and then he heard gunshots, though he did not see the shooting, as he was running away. (Id. at 188–89).

Loami Colon-Pacheco also testified that Petitioner was standing up when he shot Ramos-Diaz, who was walking away from Petitioner. (Id. at 257–59). Jochebed Pacheco-Morales testified about Petitioner's threats of violence if Ramos-Diaz did not come outside to fight again, and said that she

did not see Ramos-Diaz with a gun. (Id. at 307–08). And she testified that Petitioner shot Ramos-Diaz from behind while running toward him. (Id. at 310).

Dr. Michael Johnson, who was offered as an expert in forensic pathology, opined that Ramos-Diaz died from gunshot wounds and that the bullets entered his body through his back, his thigh, and the inner side of his left leg. (Id. at 269–70, 275–77).

Petitioner, by contrast, testified that after he went outside following the first fight, Alex Resto-Monalvo (who owned the house where the party took place (id. at 220–21)), forced him at gunpoint to come back inside and fight again. (Id. at 400–01). Petitioner tried to jump over a closed gate to return inside, and broke the gate, so Resto-Monalvo struck and pushed him to the ground, where others took jewelry and money from him. (Id. at 404–05). According to Petitioner, he then saw Ramos-Diaz picking up a gun from the ground, and grabbed him by the hands. (Id. at 405). The two struggled over the gun on the ground, and at some point Petitioner obtained it and "that's when I started shooting." (Id. at 406). "I wasn't going to let him shoot me because I was fearful for my own life." (Id.). Petitioner testified that it was not his intention to kill Ramos-Diaz. (Id. at 413).

In sum, multiple eyewitnesses testified that Petitioner shot Ramos-Diaz from behind while standing up. The medical expert confirmed that the bullets came from behind. The witnesses' stories also lined up in other material respects about the surrounding circumstances. And the prosecution did not attack Petitioner's character for truthfulness or peacefulness. So there is no reason to conclude that introduction of such character evidence would have changed the outcome.

Ground Four therefore entitles Petitioner to no relief.

### E. Ground Five – Due Process: after discovered evidence

Finally, Petitioner argues that he was denied due process by way of the state courts' disposition of his claim that after-discovered evidence required a new trial. (Doc. 1 at 11). He avers that he "has evidence from Jonathon Pacheco" that one of the Commonwealth's witnesses lied at trial. (Doc. 11 at 28).

In the Superior Court, Petitioner challenged the PCRA court's denial of his request to hold a hearing regarding this after-discovered evidence. (Doc. 8-1 at 767).  In his PCRA petition, Petitioner represented that Mr. Pacheco would testify that, after Petitioner's trial, Commonwealth witness Loami Pacheco-Morales ("Loami"), informed Mr. Pacheco that "he lied to the police

and at trial about how the events occurred leading to the death of [Ramos-Diaz]." (Doc. 8-1 at 789). 2020 WL 3056117, at *8.

The PCRA court concluded that a hearing was not warranted because (1) the offered statement of Mr. Pacheco was inadmissible hearsay; (2) the evidence would only be used to impeach credibility; and (3) the evidence would not compel a different verdict. (Doc. 8-1 at 699–700). The Superior Court agreed with the PCRA court's conclusion that the evidence did not entitle Petitioner to relief because it would only be used to impeach credibility.[3] (Doc. 8-1 at 790). 2020 WL 3056117, at *8.

Petitioner now argues that this evidence should have been admissible under Pennsylvania Rule of Evidence 803(3) as a then-existing mental, emotional, or physical condition, and that the state courts should have ordered a hearing to allow him "the chance to fully develop the record." (Doc. 11 at 29).

Petitioner's argument was rejected by the Superior Court on a state-law ground. Specifically, the Superior Court relied on 42 Pa. Cons. Stat.

---

[3] "To obtain relief based upon newly-discovered evidence under the PCRA," a petitioner "must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." Commonwealth v. Washington, 927 A.2d 586, 595–96 (Pa. 2007).

§9543(a)(2)(vi), which provides that for a PCRA petitioner to be eligible for relief based on after-discovered evidence, he must show that his conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." The Pennsylvania Supreme Court has instructed that evidence used "solely to impeach credibility" does not satisfy 42 Pa. Cons. Stat. §9543(a)(2)(vi). Commonwealth v. Washington, 927 A.2d 586, 595–96 (Pa. 2007). Because the proposed testimony of Mr. Pacheco that Loami lied at trial would be used only to impeach that witness's credibility, the Superior Court concluded that such evidence did not entitle Petitioner to PCRA relief. 2020 WL 3056117, at *8.

Ground Five does not task this court with reviewing a state-court adjudication of a constitutional claim. Instead, the question is whether the state court itself deprived Petitioner of due process, and whether he thus remains in state custody in violation of the Constitution.

"When a State choses to offer help to those seeking relief from convictions," as Pennsylvania has done through the PCRA, "due process does not dictate the exact form such assistance must assume." Osborne, 557 U.S. at 69 (2009) (internal quotations omitted). The court must determine only whether the procedure used to consider Petitioner's after-discovered

evidence claim in the Pennsylvania state courts was "fundamentally inadequate to vindicate the substantive rights provided." Id.

Petitioner appears to identify two alleged due process deprivations worked by the state courts' treatment of his after-discovered evidence claim. First, he asserts that he should have been granted a hearing on this claim. (Doc. 11 at 29). Second, he asserts more generally that the state courts "prevented" him from advancing this claim, which he says demonstrates his innocence, by way of "an arbitrary ruling from a PCRA court judge and a Superior Court panel who did not want to hear the issue." (Id.). The court construes this paragraph as submitting that the state courts deprived him of the opportunity to present in post-conviction proceedings after-discovered evidence proving that he is actually innocent.[4]

As to a hearing, the court cannot conclude that adjudication of a PCRA petitioner's claim of after-discovered evidence without a hearing is fundamentally inadequate to vindicate a substantive right provided by the Commonwealth. See Osborne, 557 U.S. at 69. Pennsylvania affords those convicted of a crime the right to obtain collateral relief if they plead and prove that their conviction resulted from "[t]he unavailability at the time of trial of

---

[4] *Pro se* filings are construed "liberally," meaning that courts "remain flexible," and "apply the relevant legal principle even when the complaint has failed to name it." Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021).

exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa. Cons. Stat. §9543(a)(2).[5] A PCRA petitioner must submit in writing the grounds relied on for relief, and may include argument, affidavits, or other evidence of facts supporting the grounds for relief. Pa. R. Crim. P. 902(A)(16)(D). If the PCRA judge concludes that the petitioner is not entitled to relief, the petitioner is given notice of the court's intention to dismiss the petition. Pa. R. Crim. P. 907(1). The petitioner may then respond within 20 days, after which the judge shall either order the petition dismissed, grant leave to file an amended petition, or order further proceedings. Id.[6] The petitioner may appeal the order dismissing his petition to the Superior Court, see Pa. R. Crim. P. 910; Pa. R. App. P. 341(f), and may petition for allowance of appeal from the Superior Court's final order to the Pennsylvania Supreme Court. See Pa. R. App. P. 1112(a).

The court does not find this procedure inadequate to vindicate a petitioner's right to obtain relief on the basis of after-discovered evidence.

_____

[5] Notably, the Commonwealth does not afford the convicted the absolute right to a hearing on a PCRA petition. See Pa. R. Crim. P. 907(a)(2); Commonwealth v. Jones, 942 A.2d 903, 906 (Pa. Super. Ct. 2008) ("There is no absolute right to an evidentiary hearing on a PCRA petition.")).

[6] The PCRA Court gave Petitioner this Rule 907 notice prior to dismissing his petition. (Doc. 8-1 at 664–88).

Petitioners are allowed to present such evidence in documentary form and submit written argument as to why it would have changed the outcome of their trial. And they can challenge the legal conclusions of lower courts on appeal. This procedure is similar to that afforded those convicted in federal court, <u>see</u> 28 U.S.C. §2255, and it gives petitioners a fair opportunity to vindicate this post-conviction right.

The court next assesses the more general claim that the state courts' disposition of his claim deprived Petitioner of due process.

Whether a federal constitutional right "to be released upon proof of 'actual innocence' … exists is an open question." <u>Osborne</u>, 557 U.S. at 71. But "the threshold showing for such a claim would necessarily be extraordinarily high." <u>Cordaro v. United States</u>, 933 F.3d 232, 240 (3d Cir. 2019). Assuming without deciding that a "freestanding claim of actual innocence" exists under the Constitution, Third Circuit precedent instructs that a claim of this nature is to be "initially tested against the actual innocence gateway standard by which a habeas petitioner may overcome a procedural default even without cause and prejudice." <u>Cordaro</u>, 933 F.3d at 240–41 (internal quotations omitted). Under that standard, a petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no

- 27 -

reasonable juror would have convicted him." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).

As Petitioner concedes, Mr. Pacheco was not present at the scene of the killing. (Doc. 11 at 28). His proposed testimony instead stems from conversations he had with Loami after the fact, during which conversations Loami purportedly told Mr. Pacheco that that he had lied at trial. (Doc. 8-1 at 768). Even if Mr. Pacheco's testimony were admissible under some exception to the rule against hearsay, it goes only to the credibility of Loami's testimony; it is neither direct nor circumstantial evidence of Petitioner's actions or mental state during the killing, and thus cannot itself prove that Petitioner is innocent. Moreover, as the PCRA court recognized, Loami "was not the only eyewitness to the shooting." (Doc. 8-1 at 700).  And other eyewitness testimony was corroborated by medical evidence indicating that Ramos-Diaz was shot in the back. (Id.). Considering that the proposed after-discovered evidence neither itself proves Petitioner's innocence nor refutes the other evidence of his guilt, the court concludes that Petitioner has not demonstrated that, were this evidence presented to a jury, it is more likely than not that no reasonable juror would have convicted him. Accordingly, he has not satisfied the actual innocence gateway standard, and so has established no due process violation on this ground.

## IV.    Certificate of Appealability

Appeals may not be taken from final orders in habeas proceedings brought by state prisoners unless a circuit justice or judge issues a "certificate of appealability." 28 U.S.C. §2253(c)(1)(A). "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." Id. §2253(c)(2). This standard is satisfied by a demonstration that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

The court here concludes that jurists of reason could not disagree with its resolution of Petitioner's constitutional claims. It also concludes that the issues presented are not adequate to deserve encouragement to proceed further. Therefore, no certificate of appealability will issue.

## V.    CONCLUSION

For the foregoing reasons, Petitioner's petition will be denied. No certificate of appealability will issue. An appropriate order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 29, 2024**
21-335-01